UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID SIMMONS,                                                Plaintiff, | : |
| v. | :      No. 3-09-cv-1218 (WWE) |
| OFFICER NED LOVE,                        Defendant. | : |

**MEMORANDUM OF DECISION ON DEFENDANT LOVE'S
MOTION FOR SUMMARY JUDGMENT**

In his complaint, plaintiff David Simmons, pro se, alleged that defendants Michael Friedman, Ash Creek Café ("Café"), Bridgeport Police Officer Ned Love, Jane Doe and John Doe are liable to him for malicious prosecution, false arrest, defamation of character, racial profiling and violation of his rights pursuant to the First and Eighth Amendment of the United States Constitution. This Court has previously granted in favor of the defense the summary judgment motion by defendants Friedman, Ash Creek Café, Jane Doe and John Doe. Defendant Love has also filed a motion for summary judgment on the claims against him. For the following reasons, defendant Love's motion for summary judgment will be granted.

**Background**

Defendant Love has submitted a statement of facts not in dispute that is supported by evidentiary exhibits. Plaintiff has responded that all of his alleged facts are true. The Court incorporates herein the undisputed facts from the prior ruling on summary judgment and finds that the parties' recent submissions reflect that the following facts are also not disputed.

On April 6, 2008, Officer Love was dispatched to the Café in Bridgeport,

Connecticut on a complaint that David Simmons had been assaulted by an employee at the Café. Two other officers, Michelle Rodriguez and Ronald Henderson, were also dispatched to the Café.

Upon his arrival on the scene, Officer Love observed plaintiff walking in the middle of the street, obstructing the flow of traffic and creating a hazardous condition. Officer Love instructed plaintiff to remove himself from the street and proceed to the sidewalk. After he parked and exited his patrol car, Officer Love approached plaintiff who had moved onto the sidewalk. When Officer Rodriguez arrived on the scene, she saw plaintiff standing near Officer Love, shouting loudly and arguing with Officer Love.

Officer Henderson arrived next and positioned himself nearby while Officer Love conducted his investigation. Officer Love noted that plaintiff had a distinct odor of alcohol on his breath, that his speech patterns were slurred and erratic, and that his posture and stance were unsteady. Plaintiff admitted that he had been drinking.

Officer Love patted plaintiff down for weapons and found a vodka bottle in his right jacket pocket. The bottle was spilling because the top was loose. Plaintiff also had several more bottles of vodka in his possession.

In a statement given January 2010, plaintiff stated that he had consumed two beers and "probably had maybe one shot of vodka."

Plaintiff informed Officer Love that he had been assaulted and thrown out of the Café because he is an African American. Officer Love noted that plaintiff did not appear to be injured and that he did not indicate any injury. Plaintiff began to shout and swear loudly at the officers, pedestrians and patrons of the Café. However, the officers were able to calm plaintiff.

Officer Love interviewed the employee witnesses at the Café while Officers Rodriguez and Henderson remained with plaintiff.  The employee witnesses stated that plaintiff appeared intoxicated and that he was loud and disruptive, shouting obscenities at employees. The employee reported to Officer Love that plaintiff had refused to leave after being asked to vacate the premises by Café management and that plaintiff had to be escorted out of the Café.

Officer Love informed plaintiff that he was not wanted in the Café, and he offered to help plaintiff onto the next bus home to Norwalk.  He asked plaintiff to remain calm and refrain from shouting obscenities.

When the Norwalk bus arrived, Officer Love escorted plaintiff to the bus. However, plaintiff became disruptive as he climbed the stairs onto the bus.  While at interior front of the bus, plaintiff shouted obscenities, and he waived and flailed his arms close to the driver and other passengers.

Plaintiff was removed from the bus, handcuffed and arrested for Breach of the Peace 2nd degree.  Officer Love cited as a reason for the arrest his concern for the safety of the bus driver and the passengers.  Plaintiff struggled during the process of his removal and escort to the patrol car.  Officer Rodriguez observed the removal of plaintiff and averred by affidavit that Officer Love did not assault plaintiff.

Plaintiff was transported to the booking area at the Bridgeport Police Department.  Officer Love disposed of the bottles of vodka.

On April 7, 2008, plaintiff was arraigned in Connecticut Superior Court.  The Superior Court Judge found probable cause for the arrest and set bond at $250. Plaintiff did not make bond and remained in the custody of the Connecticut Department

3

of Correction.

While still in custody of the Department of Correction, plaintiff negotiated a plea bargain with the State of Connecticut in connection with the charges. The plea bargain provided that plaintiff's charges would be nolled on May 7, 2008 in consideration for "time served" through that date. On May 7, 2008, plaintiff's charges were nolled and he was released.

In his deposition, plaintiff stated that he did not know whether Officer Love's actions were racially motivated. He also stated that his injuries resulting from the incident consisted of bruised wrists and a sore shoulder. He took one aspirin as a medical treatment but never went to see a doctor for these injuries.

## Discussion

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir. 1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary

judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Liberty Lobby, 477 U.S. at 24.

**Malicious Prosecution**

Plaintiff alleges malicious prosecution in violation of his constitutional rights.  Defendant argues that plaintiff's claims fail because his criminal charges were not terminated in his favor.

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and establish the elements of a malicious prosecution claim under state law."  Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002).  Thus, consistent with Connecticut state law, a plaintiff must prove the following elements:  (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice.  Lo Sacco v. Young, 20 Conn. App. 6, 19–20 (1989).  A plaintiff may satisfy the favorable termination requirement by showing that the charges were nolled or discharged prior to a trial without request by plaintiff or without an exchange for some benefit to the state or victim.  Holman v. Cascio, 390 F. Supp. 2d 120, 123-24 (D. Conn. 2005).  In this instance, plaintiff's charges were nolled as a result of negotiations with the State's Attorney, and plaintiff was released in exchange for the time which he had already served with the Department of Correction.  Plaintiff benefitted from the nolle by being released and avoiding a trial, potential

5

conviction and a resulting sentence of up to six months in prison; the state benefitted by saving the expense of trial and plaintiff's incarceration. Accordingly, summary judgment will be granted on the claim for malicious prosecution.

False Arrest

To establish a claim for false arrest under 42 U.S.C. § 1983, a plaintiff is required to show that "the defendant intentionally confined him without his consent and without justification." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). When an arresting officer had probable cause to arrest the plaintiff, justification existed for the arrest, and therefore, a cause of action for false arrest cannot be sustained. Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995). "Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime. Weyant, 101 F.3d at 852.

Plaintiff bears the burden of demonstrating a lack of probable cause for the arrest. Baker v. McCollan, 443 U.S. 137, 143-46 (1979). The issue of whether probable cause existed may be resolved on summary judgment where there is no disputed fact concerning the events and knowledge of the officers. Singer, 63 F.3d at 118-19.

Pursuant to Connecticut General Statutes § 53a-181, a person commits Breach of the Peace 2d when:

> With intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person . . . (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place; or . . .(5) in a

> public place, uses abusive or obscene language or makes an obscene gesture; . . . For purposes of this section, "public place" means any area that is used or held out for use by the public whether owned or operated by public or private interests.

According to the undisputed facts concerning the events leading to plaintiff's arrest, Officer Love had probable cause to arrest plaintiff for Breach of the Peace 2d. He was on a public transit bus, shouting obscenities, and waving his arms thereby endangering the bus driver and passengers. The Court will grant summary judgment on the claim of false arrest.

### Excessive Force

Plaintiff asserts that Officer Love used excessive force when he handcuffed him, escorted him and placed him in his patrol car. The Court finds that qualified immunity bars this claim.

Whether the use of force in a particular seizure is "reasonable" is governed under the Fourth Amendment standard of reasonableness, which determination requires consideration of the facts and circumstances of the particular case. Graham v. Connor, 490 U.S. 386, 396 (1989). Police officers must make "split-second judgments" in circumstances that are "tense, uncertain and rapidly evolving," and therefore, the reasonableness of the force applied must be judged from an on-scene perspective and not with the 20/20 vision of hindsight. Saucier v. Katz, 533 U.S. 194, 205 (2001).

Here, the undisputed record reveals that Officer Love is entitled to the shield of qualified immunity. "Under federal law, a police officer is entitled to qualified immunity where (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively

reasonable for him to believe that his actions were lawful at the time of the challenged act." Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007). The objectively reasonable test is satisfied if officers of reasonable competence could disagree on the legality of the defendant officer's actions. Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1998).

The right to be free from the use of excessive force was "clearly established" at the time of plaintiff's arrest. Mickle v. Morin, 297 F.3d 114, 122 (2d Cir. 2002). Generally, where the circumstances are disputed, and contrasting accounts raise issues as to the reasonableness of the force, summary judgment cannot be granted on a defense of qualified immunity. Id. In this instance, plaintiff has not presented evidence suggesting a contrary version of the facts.

Thus, based on the undisputed facts, it was at least objectively reasonable for Officer Love to believe that plaintiff posed a potential risk to the public and should be arrested, handcuffed and escorted to the police car. Summary judgment will be granted on this claim.

Racial Profiling

Plaintiff alleges that defendant engaged in racial profiling in connection with the incident resulting in his arrest.

Constitutional claims alleging racial profiling are subject to the analysis of the Fourteenth Amendment Equal Protection Clause. Green v. Gonzalez, 2010 WL 843885, *4 (S.D.N.Y. 2010). "To state a race-based claim under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against him on the basis of his race." Brown v. City of Oneonta, 221 F.3d 329, 337 (2d

Cir. 2000). In this instance, plaintiff has not adduced any evidence suggesting that Officer Love was motivated to act on the basis of plaintiff's race. In his deposition, plaintiff stated that he did not know whether Officer Love's conduct was racially motivated and that he believed that he had been the target of racial profiling because of his race. However, as previously discussed, Officer Love arrived on the scene at the request of plaintiff; and Officer Love had the opportunity to observe plaintiff's conduct and thereby assess that probable cause existed for his arrest. Summary judgment will be granted on this claim on the basis of qualified immunity.

### First Amendment and Eighth Amendments

Plaintiff alleges that his First and Eighth Amendment rights were violated because he was not allowed to dine in a public café. These claims are unsustainable and summary judgment will be granted in the defense's favor.

Plaintiff's First and Eighth Amendment claims are vague and fail to state any allegations lending to a suggestion that Officer Love was involved in such violations. However, in the context of his First and Eighth Amendment claims, plaintiff states that "it is absolutely intolerable" that he was "subjected to excessive force by staff member and Bridgeport Police" when his "meal had already been paid for." Even if the Court construes plaintiff's claim as a retaliatory arrest to chill his First Amendment rights, this claim will fail. To prevail on a First Amendment retaliation claim, plaintiff must prove "(1) he has an interest protected by the First Amendment; (2) defendant's actions were motivated or substantially caused by his exercise of that right; and (3) defendant's actions effectively chilled the exercise of his First Amendment right." Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir.2001). It is well established that the existence of

probable cause for an arrest is a complete defense to a claim of retaliatory arrest. Golodner v. City of New London, 2011 WL 5083503, *2 (2d Cir. 2011).

Plaintiff cannot maintain this claim pursuant to the Eighth Amendment because his claims concern conduct that occurred prior to conviction.  See City of Revere v. Mass. General Hosp., 463 U.S. 239, 244 (1983) (Eighth Amendment scrutiny is appropriate after state has secured a formal adjudication in accordance with due process).

### State Law Claims

Plaintiff's remaining claims are brought pursuant to state law.  Because the Court will grant summary judgment on the federal claims, the Court will decline to exercise its supplemental jurisdiction over the state law claims.  See 28 U.S.C. ss 1367(c)(3).

### Conclusion

For the foregoing reasons, defendant's Motion for Summary Judgment (doc. #39) is GRANTED.  Plaintiff's Motion to Commence Trial (doc. #43) is Moot.

The Court declines to exercise supplemental jurisdiction over plaintiff's state law claims and such claims are dismissed without prejudice.

The clerk is instructed to close this case.

```
       /s/
```
Warren W. Eginton
Senior U.S. District Judge

Dated at Bridgeport, Connecticut this 12th day of January, 2012.